FILED
SUPERIOR COURT
OF GUAM

2018 FEB 16 PM 4: 34

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0010-17 |
| vs. | DECISION AND ORDER |
| STEVEN ANTHONY MCCOLLUM, JR., | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 5, 2017, for hearing on Defendant Steven Anthony McCollum, Jr.'s ("Defendant") Motion to Suppress. Defendant was present with counsel Public Defender Stephen P. Hattori, and Assistant Attorney General Matthew A. Phelps was present on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On January 13, 2017, Defendant was indicted with the following charges: (1) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); and (2) Possession of Less than an Ounce of Marijuana (As a Violation). (Indictment, Jan. 13, 2017). These charges stem from the discovery of drugs and drug paraphernalia in Defendant's vehicle during the execution of a traffic stop on January 2, 2017. (Decl. of James C. Collins, Magistrate's Compl., Jan. 3, 2017).

On August 15, 2017, Defendant filed a Motion to Suppress. On August 25, 2017, the Government filed its Opposition. No Reply was filed.

On October 5, 2017, the Court held a Suppression Hearing and heard sworn testimony from Guam Police Department ("GPD") Officers Justin Cruz and Benny T. Babauta (hereinafter "Officer Cruz" and "Officer Babauta," respectively). At the conclusion of the hearing, the Court gave the parties leave to file proposed findings of fact and conclusions of law based on the evidence that came forward. On December 5, 2017, Defendant filed Proposed Findings of Fact and Conclusions of Law. On January 9, 2017, the Government filed its Proposed Findings of Fact and Conclusions of Law. On January 9, 2017, the Government also filed a Motion to Strike in reference to a portion of Defendant's Proposed Findings of Fact and Conclusions of Law. No response was filed.[1]

## DISCUSSION

## MOTION TO STRIKE

The Court will first address the Government's Motion to Strike. The Government moves the Court to strike a portion of Defendant's Proposed Findings of Fact and Conclusions of Law, paragraph 23, which refers to alleged coaching taking place during the evidentiary hearing.[2] The Government argues that it is improper for defense counsel to "impute any reference of coaching against the undersigned in a public document; therefore any reference

---

[1] Any opposition or response to the Motion to Strike was due January 23, 2018, fourteen days after the filing of the Motion & Notice of Motion. *See* Notice of Motion, Jan. 9, 2018.

[2] The paragraph reads:

> Moreover, there was conflicting testimony regarding the crutch. Officer Cruz initially stated the crutch was made of paper and there was nothing irregular about the paper crutch. *However, after some coaching from Attorney Matthew Phelps, Officer Cruz suddenly began to believe that perhaps the crutch was made of zig zag paper.* Contrary to this description, Officer Babauta recalled that the crutch was made of cardboard and that it was partially burnt. There is no evidence corroborating the existence of a crutch. In fact, both officers described the "crutch" differently. Yet both Officers concede that the crutch [gives] them probable cause to search the car.

Def. FFCL at 3, ¶ 23 (emphasis added).

*People v. McCollum*
Case No.CF00010-17
Decision and Order

should be struck from the record," citing Model Rules of Professional Conduct 3.4(b). (Mot. Strike at 2-3, Jan. 9, 2018).

At the Suppression Hearing, counsel for defense objected to Government counsel's form of questioning to Officer Cruz based on coaching. The Court overruled defense counsel's objections and permitted Government counsel to finish his questioning. The Court, having already ruled on defense counsel's objection, is inclined to agree with the Government that any reference to coaching should be struck from the record, and GRANTS the Government's Motion to Strike.

**MOTION TO SUPPRESS**

Defendant moves the Court to suppress evidence seized from the traffic stop. Defendant argues that the officers did not have reasonable suspicion to detain him, and that even if he was properly detained, they did not have the authority to search his vehicle. *See generally*, Mot. Suppress, Aug. 15, 2017. The Government argues that there was reasonable suspicion to effectuate a traffic stop and that during the stop, the officer developed probable cause to search Defendant's vehicle. *See generally*, Opp'n, Aug. 25, 2017.

At the Suppression Hearing, Officer Cruz and Officer Babauta testified that the following occurred on or about January 2, 2017:

Officers Babauta and Cruz testified that they were driving on Route 16 when they observed a vehicle driving at a speed higher than the posted speed limit going in the opposite direction. Officer Babauta testified that the vehicle was passing other vehicles to get ahead, and the road was still wet from when it rained earlier. Officer Babauta made a u-turn to follow the vehicle and effectuated a traffic stop. The vehicle pulled over.

Officer Cruz testified that as they approached the vehicle, Defendant had already opened his door, and explained that his window was not working. Officer Cruz testified that Officer Babauta approached Defendant on the driver's side of the vehicle, and he approached the passenger side of the vehicle. Officer Cruz testified that he could lightly hear the discussion between Officer Babauta and Defendant, and that he was there for safety reasons. Officer Cruz testified that Defendant was the only person in the vehicle. Officer Cruz testified that he

confiscated a marijuana crutch from the vehicle after Officer Babauta observed it, and admitted that it was not listed in the Guam Police Department Evidence Custody Receipt he filled out. Officer Cruz, when asked to describe the crutch, did not initially recall specific details about the crutch, but later testified that it may have been made of zig zag paper.

Officer Babauta also testified that as they approached the vehicle, the door to the driver's side of the vehicle opened. Officer Babauta testified that he instructed Defendant to close the door and for Defendant to roll down his window, and that Defendant responded that he could not roll down the window. Officer Babauta testified that he spoke with Defendant, and requested for his license and registration. Officer Babauta testified that Defendant reached over to obtain his license and registration from a black pouch on the passenger seat. As Defendant was getting the documents, Officer Babauta looked around the vehicle and observed a pair of scissors and a makeshift marijuana crutch in the door handle area. Officer Babauta testified that the crutch was made out of cardboard, and that the combination of scissors and the crutch indicated to him that there was drug paraphernalia. Officer Babauta testified that he obtained Defendant's license and registration and directed Defendant out of the car. Officer Babauta testified that he wanted Defendant to exit the vehicle because he was concerned that Defendant might try to discard evidence. Officer Babauta testified that Defendant was compliant.

After Defendant exited the vehicle, Officer Babauta showed Defendant the crutch he observed, and asked him if he had any other items in the car, to which Defendant responded he had marijuana. Officer Babauta then asked Defendant for consent to search the vehicle. Defendant refused. Officer Babauta testified that he told Defendant he was going to search the vehicle anyways, based on Defendant's admission that he had marijuana in the car. Officer Babauta testified that Officer Cruz was standing with Defendant while he searched the vehicle. Officer Babauta testified that he started the search by examining the black pouch that Defendant obtained his license and registration from. Officer Babauta testified he found two pipes, one with suspected methamphetamine residue, and the other with suspected methamphetamine still inside. Officer Babauta testified he then started heading towards the trunk of the vehicle, and

heard Defendant state he had a bong inside a case in the trunk. Officer Babauta testified that Defendant then gave consent to search.

Officer Babauta testified that Defendant did not reduce any of his admissions made at the scene to writing later at the police station. Officer Babauta testified that Defendant was not read his *Miranda* rights at the scene.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargulaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

Under Guam law, "[a]ll motor vehicles traveling upon the public highway shall be driven at a careful, prudent rate of speed not greater than nor less than is reasonable and proper, having due regard to the surface of the highway, the width of the highway and the condition of the traffic upon the highway and all other restrictions and conditions then and there existing." 8 G.C.A. § 3301(a). It is a traffic offense for a vehicle to operate in excess of maximum speeds posted. *See* 8 G.C.A. § 3301(f). In this case, both Officers Babauta and Cruz testified that they observed Defendant was driving at a speed higher than the posted speed limit on Route 16. Officer Babauta testified that the vehicle was passing other vehicles to get ahead, and the road

was still wet from when it rained earlier. Defendant takes issue with the fact that the officers did not use a radar gun to assess the speed of his vehicle, but does not provide any legal authority to support an assertion that a radar or tracking device is required to prove that a traffic violation occurred. *See* Def. FFCL at 6, ¶ 4 ("In the present case, the officers testified that they did not use a radar gun to judge Defendant's speed. Therefore, the officers could not accurately calculate whether Defendant was in fact driving over the speed limit."). Therefore, the Court finds that based on the officers' observations, it was reasonable for them to stop the vehicle because they had reasonable suspicion to believe that the driver of the vehicle, Defendant, committed a traffic violation. *See Chargualaf,* 2001 Guam 1 ¶ 17.

The next issue before the Court is whether Defendant was impermissibly seized under the Fourth Amendment when Officer Babauta asked him to step out of the vehicle. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States,* 135 S.Ct. 1609, 1614 (2015). "An officer . . . may conduct unrelated checks during an otherwise lawful traffic stop . . . [but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id. See also United States v. Branch,* 537 F.3d 328, 336 (4th Cir. 2008) (citing *Florida v. Royer,* 406 U.S. 491, 500 (1983)) ("If a police officer wants to detain a driver beyond the scope of a routine traffic stop, however, he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place."); *United States v. Givan,* 320 F.3d 452, 458 (3d Cir. 2003) ("After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation."). Thus, the Court must determine if reasonable suspicion existed for Officer Babauta to continue the traffic stop, detain Defendant, and conduct a search of Defendant's vehicle. The Government argues that "Officer Babauta had probable cause to believe that Defendant may have committed Possession of a Schedule I Controlled Substance ("PCS"), Driving while Under the Influence of a Controlled Substance ("DUI"), and any other

related crimes. PCS and DUI are illegal on Guam. Based on the facts in our case, the officers had already observed marijuana in the vehicle; therefore, it was reasonable for the officers to believe that additional evidence relevant to the crime of arrest might be found in the vehicle." (Gov't FFCL at 4).

"In order to demonstrate reasonable suspicion, a police officer must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot." *Branch*, 537 F.3d at 337 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Terry*, 392 U.S. at 21). Here, Officer Babauta testified that he observed scissors and a makeshift marijuana crutch in the side of Defendant's door. The observation of these two items is the only articulable fact that is presented. No testimony was given indicating that officers smelled marijuana in the vehicle. No testimony was given indicating that Defendant had any appearance or characteristics of being under the influence of a controlled substance. Further, the officers had contradicting descriptions of what the alleged marijuana crutch looked like, the marijuana crutch was not listed on the custody receipt, and is allegedly therefore not in GPD custody either. Based on these facts or lack thereof, the Court does not find that reasonable suspicion existed for the officers to continue the stop and search the vehicle, and any statements or items seized from this point forward must be suppressed.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress. A Further Proceedings is set for February 26, 2018 at 10:00 a.m.

**IT IS SO ORDERED** this 16th day of February, 2018.

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:

FEB 16 2018 ____ Time: 4:27 PM

Deputy Clerk, Superior Court of Guam

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. McCollum*
Case No. CF00010-17
Decision and Order